UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                              PLAINTIFF

v.                                                    CRIMINAL ACTION NO. 3:22-CR-111-DJH

JOHN E. LOHDEN, JR.                                                   DEFENDANTS
DAYTON PETERSON
JOSHUA ISAAC LOHDEN
DAVID LANGDON
J. LOUIS NANCE
SAMANTHA TRUMMER

**PRETRIAL MEMORANDUM**
-- *Filed Electronically* --

Comes now the United States of America, by counsel, Assistant United States Attorneys Alicia P. Gomez and Frank E. Dahl, III, and submit this Pretrial Memorandum to assist the Court in presiding over this trial.

**A. STATUTES INVOLVED AND ELEMENTS OF OFFENSES**

   I.   **Counts 1 and 6: Kidnapping, in violation of Title 18, United States Code, Sections 1201(a)(1) and 2**

   *Elements:*
   a. The defendant seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away the victim;
   b. The defendant held the victim for ransom, reward, or for any other reason;
   c. In committing or in furtherance of the commission of the offense, the defendant used a means, facility, or instrumentality of interstate or foreign commerce; and
   d. The defendant acted unlawfully, knowingly and willfully

   *Elements Aiding and Abetting:*
   a. First, that the crime of kidnapping was committed.
   b. Second, that the defendant helped to commit the crime or encouraged someone

       else to commit the crime.

   c. And third, that the defendant intended to help commit or encourage the crime.

II. **Counts 2 and 7: Impersonator Making Arrest or Search, in violation of Title 18, United States Code, Sections 913 and 2**
   a. The defendant represented himself to be an officer, agent or employee of the United States; and
   b. In such assumed character (1) arrested or detained any person; or (2) searched the person, buildings, or other property of any person.

   *Elements Aiding and Abetting:*
   a. First, that the crime of impersonator making arrest or search was committed.
   b. Second, that the defendant helped to commit the crime or encouraged someone else to commit the crime.
   c. And third, that the defendant intended to help commit or encourage the crime.

III. **Counts 3, 13, 17, 19: Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)**
   a. The defendant committed the elements of a drug trafficking crime prosecutable in federal court; and
   b. The defendant knowingly possessed a firearm,
   c. The possession of the firearm was in furtherance of the defendant's drug trafficking crime.

IV. **Counts 4 and 16: Possession of a Firearm by a Prohibited Person; Title 18, United States Code, Sections 922(g)(1), and 924(a)(2)**
   a. The defendant being a convicted felon;
   b. knowingly possessed, in and affecting commerce, a firearm;
   c. with knowledge that he had been previously convicted of a crime punishable by imprisonment for a term exceeding one year.

V. **Counts 5 and 14: Possession of an Unregistered Firearm, in violation of Title 26, United States Code, Sections 5841, 5861(d), and 5871**
   a. That the defendant knowingly possessed an NFA firearm;
   b. That the firearm was a (Count 5: an Anderson Manufacturing, Model AM-15, 5.56 caliber short barrel rifle, bearing serial number 15039263, with a barrel measuring less than 16 inches; Count 14: a Stun ball grenade, which is a destructive device);
   c. That the defendant knew of the characteristics of the firearm, that is, that it was a (Count 5: an Anderson Manufacturing, Model AM-15, 5.56 caliber short barrel rifle, bearing serial number 15039263, with a barrel measuring less than 16 inches; Count 14: a Stun ball grenade, which is a destructive device);
   d. That the firearm was (could readily have been put) in operating condition;
   e. That the firearm was not registered to the defendant in the National Firearms Registration and Transfer Record. It does not matter whether the defendant knew that the firearm was not registered or had to be registered.

VI. **Count 8: Robbery, in violation of Title 18, United States Code, Sections 1951(a) and 2**

   *Elements:*

   a. The defendant unlawfully took personal property or money from someone or in the presence of another, against that person's will;
   b. That the defendant did so by actual or threatened force, or violence, or fear of injury immediately or in the future to the person, the person's property, property in the person's custody or possession, person or property of a relative or member of the person's family, or person or property of anyone in his company at the time of the taking;
   c. That the defendant did so knowingly; and
   d. That as a result, interstate commerce was affected in any way or degree.

   *Elements Aiding and Abetting:*
   a. First, that the crime of robbery was committed.

b. Second, that the defendant helped to commit the crime or encouraged someone else to commit the crime.

c. And third, that the defendant intended to help commit or encourage the crime.

VII. **Counts 9 and 10: Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of Title 18, United States Code, Section 924(c)(1)(A)(ii)**

a. The defendant committed the elements of a crime of violence prosecutable in federal court; and

b. The defendant knowingly brandished a firearm;

c. The brandishing of the firearm was during and in relation to the defendant's crime of violence.

VIII. **Count 11: Conspiracy to Possess with Intent to Distribute Controlled Substances, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), and (b)(1)(A)**

a. That the defendants conspired with others to possess and distribute cocaine and heroin;

b. The substances were in fact cocaine and heroin;

c. The weight was five kilograms or more of a mixture or substance containing a detectable amount of cocaine, and 1 kilogram or more of a mixture or substance containing a detectable amount of heroin.

IX. **Count 12: Possession with Intent to Distribute Controlled Substances, in violation of Title 21, United States Code, Sections 841(a)(1), and (b)(1)(A)**

a. The defendant knowingly or intentionally possessed cocaine and heroin as charged;

b. The substances were in fact cocaine and heroin;

c. The defendant possessed the substances with the intent to distribute them;

d. The weight of the substances was five kilograms or more of a mixture or substance containing a detectable amount of cocaine, and 1 kilogram or more of a mixture or substance containing a detectable amount of heroin.

**X.     Count 15: Possession with Intent to Distribute Controlled Substances, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C)**
   a. The defendant knowingly or intentionally possessed methamphetamine, cocaine, and fentanyl as charged;
   b. The substances were in fact a mixture and substance containing a detectable amount of methamphetamine, a mixture and substance containing a detectable amount of cocaine, and a mixture and substance containing a detectable amount of fentanyl,
   c. The defendant possessed the substances with the intent to distribute them.

**XI.    Count 18: Possession with Intent to Distribute Controlled Substances, in violation of Title 21, United States Code, Sections 841(a)(1), and (b)(1)(B), and Title 18, United States Code, Section 2**
   a. The defendants knowingly or intentionally possessed cocaine and heroin as charged;
   b. The substances were in fact cocaine and heroin;
   c. The defendants possessed the substances with the intent to distribute them;
   d. The weight of the substances was 500 grams or more of a mixture or substance containing a detectable amount of cocaine, and 100 grams or more of a mixture or substance containing a detectable amount of heroin.

**XII.   Count 20: Engaging in Monetary Transactions Derived From Specified Unlawful Activity, in violation of Title 18, United States Code, Section 1957.**
   a. The defendant knowingly engaged in a monetary transaction;
   b. The monetary transaction was of a value greater than $10,000;
   c. The monetary transaction involved criminally derived property;
   d. Criminally derived property was derived from specified unlawful activity;
   e. The defendant knew that the monetary transaction involved criminally derived property;
   f. The monetary transaction took place within the United States.

**B. STATEMENT OF FACTS**

The United States' statement of facts is as follows:

On July 20, 2021, in Jefferson County, located in the Western District of Kentucky, defendants John E. Lohden, Jr., Joshua Lohden, and J. Louis Nance, aided and abetted by each other and others, kidnapped Adult Victim 1 for ransom. During the commission of this offense, defendants John E. Lohden, Jr., Joshua Lohden, and J. Louis Nance, aided and abetted by each other and others, did falsely assume and pretend to be an officer and employee of the United States acting under the authority thereof, that is a Deputy of the United States Marshals. Defendants John E. Lohden, Jr., Joshua Lohden, and J. Louis Nance falsely wore insignia of the United States Marshals and detained and searched the property of Adult Victim 1. In committing the kidnapping and in furtherance of the commission of the offense, defendants John E. Lohden, Jr., Joshua Lohden, and J. Louis Nance used a cellular phone, which is a means, facility, and instrumentality of interstate or foreign commerce.

On July 21, 2021, in Bullitt County, located in the Western District of Kentucky, Detective John Fowler located a stolen white Ford Explorer at the Baymont Inn. The Detective set up physical surveillance and observed Joshua Lohden enter the vehicle. Detective Fowler conducted a felony traffic stop and located in the vehicle marijuana, large amounts of United States currency, and a Ruger, Model 57, 5.7 x 28 millimeter caliber pistol, bearing serial number 641-59223. Defendant Joshua Lohden possessed the firearm in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States.

On January 6, 2022, in Jefferson County, located in the Western District of Kentucky, Defendant John E. Lohden, Jr. agreed to work as an informant for law enforcement to conduct a controlled buy of firearms, which had previously been stolen from law enforcement. However,

through the investigation, it was determined that Defendant John E. Lohden, Jr. had actually possessed the firearms prior to the buy, and was acting as an informant for law enforcement under false pretenses. Defendant John E. Lohden, Jr. recruited a third party to provide John E. Lohden, Jr. with the firearms during the controlled buy to further his ruse. The third party then brought the firearms to the controlled buy location and provided them back to John E. Lohden, Jr. The firearms possessed by John E. Lohden, Jr. were a Colt, Law Enforcement RF AR15, 5.56 caliber rifle, bearing serial LE390413, a Smith & Wesson, Model M&P 15, 5.56 caliber rifle, bearing serial number JT58368, and a Remington 870, 12 gauge shotgun, bearing serial number RS34999N. These firearms had been manufactured outside of the Commonwealth of Kentucky; hence, they travelled in and affected interstate commerce. Additionally, John E. Lohden, Jr. possessed an Anderson Manufacturing, Model AM-15, 5.56 caliber short barrel rifle, bearing serial number 15039263, with a barrel measuring less than 16 inches. This firearm was not registered to John E. Lohden, Jr. in the National Firearms Registration and Transfer Record. Prior to January 2022, John E. Lohden, Jr. had been convicted of a felony, and was aware he was a convicted felon.

On August 16, 2022, in Jefferson County, located in the Western District of Kentucky, law enforcement was made aware of a home invasion, robbery and kidnapping. Law enforcement determined that Defendants John E. Lohden, Jr., Dayton Peterson, and David Langdon, aided and abetted by each other and others, did unlawfully and willfully seize, confine, kidnap, abduct, carry away, and hold Adult Victim 2, Adult Victim 3, and minor children for firearms, jewelry, currency and narcotics. While committing the offense and in furtherance of the commission of this offense, Defendants John E. Lohden, Jr., Dayton Peterson, and David Langdon used a cellular phone, which is a means, facility, and instrumentality of interstate or foreign commerce. Moreover, during the commission of this offense, Defendants John E. Lohden, Jr., Dayton Peterson, and David Langdon

7

did falsely assume and pretend to be an officer and employee of the United States acting under the authority thereof, that is a Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives, and in such assumed and pretended character did act as such, in that Defendants John E. Lohden, Jr., Dayton Peterson, and David Langdon, and aided and abetted by each other and others, falsely wore insignia of the Bureau of Alcohol, Tobacco, Firearms and Explosives and presented a fabricated search warrant bearing a cover sheet from the federal Administrative Office of the Courts, and detained Adult Victim 2, Adult Victim 3, and minor children and searched the property of Adult Victim 2 and Adult Victim 3.

Additionally, defendants John E. Lohden, Jr., Dayton Peterson, David Langdon, and Joshua Lohden and aided and abetted by each other and others, did unlawfully obstruct, delay, and affect, and attempt to obstruct, delay, and affect commerce, and the movement of articles and commodities in such commerce, by robbery, when they did knowingly attempt to take property, including United States currency and controlled substances, belonging to Adult Victim 2, against his will by means of actual and threatened force, violence, and fear of immediate injury to his person. During the commission of this offense, Defendants John E. Lohden, Jr., and Dayton Peterson, did knowingly brandish a firearm during and in relation to the robbery.

Beginning on August 16, 2022, and continuing up to and through on or about October 26, 2022, in Jefferson County, located in the Western District of Kentucky, defendants John E. Lohden, Jr., Dayton Peterson, and Joshua Lohden, knowingly and intentionally conspired with each other and others to possess with intent to distribute controlled substances to include to include five kilograms or more of a mixture or substance containing a detectable amount of cocaine, and 1 kilogram or more of a mixture or substance containing a detectable amount of heroin.

On August 18, 2022, in Jefferson County, located in the Western District of Kentucky, law

enforcement attempted to arrest defendant John E. Lohden, Jr. for outstanding warrants for his arrest. While law enforcement surrounded defendant John E. Lohden, Jr.'s vehicle, he proceeded to ram into various cars. Eventually, defendant John E. Lohden, Jr. got out of the vehicle and fled on foot, while holding his minor son. Inside the vehicle being driven by defendant John E. Lohden, Jr., officers observed in plain view multiple pieces of jewelry and two large bundles of packaged marijuana. Upon the execution of the search warrant of the vehicle, law enforcement located multiple controlled substances, to include five kilograms or more of a mixture or substance containing a detectable amount of cocaine, and 1 kilogram or more of a mixture or substance containing a detectable amount of heroin. Defendant John E. Lohden, Jr. possessed with the intent to distribute these controlled substances. Additionally, in furtherance of this drug trafficking crime, defendant John E. Lohden, Jr. knowingly possessed a firearm, that is an Anderson Manufacturing, model AM 15, multicaliber pistol, bearing serial number 21340905. Also located inside the vehicle, in defendant John E. Lohden, Jr.'s possession was a Stun ball grenade, which was not registered to him in the National Firearms Registration and Transfer Record.

On August 19, 2022, in Jefferson County, located in the Western District of Kentucky, defendants Dayton Peterson and Samantha Trummer did knowingly engage in a monetary transaction in criminally derived property of a value greater than $10,000, and which in fact was derived from specified unlawful activity, namely, the defendants paid the sum of $27,000 in currency to S.S., for the purchase of a mobile home located at 8219 Minor Lane Lot #146, Louisville, Kentucky 40219, which funds in fact were derived from the robbery that occurred on August 16, 2022.

On August 23, 2022, in Jefferson County, located in the Western District of Kentucky, law enforcement responded to a person down sitting in a red SUV in the parking lot of a Burger King.

When officers arrived they observed defendant David Langdon slumped over the console asleep. Officers observed the butt of a pistol on the driver's side floor board next to the defendant's feet, and drug paraphernalia inside of the vehicle. During the arrest of defendant David Langdon, law enforcement located numerous controlled substances, to include a mixture and substance containing a detectable amount of methamphetamine, a mixture and substance containing a detectable amount of cocaine, and a mixture and substance containing a detectable amount of fentanyl. Defendant David Langdon knowingly and intentionally possessed with the intent to distribute these controlled substances, and possessed a Colt, Model MK IV/SERIES 80, .380 caliber pistol, bearing serial number RC52260, in furtherance of this drug trafficking. Moreover, prior to August 2022, defendant David Langdon had knowingly been convicted of a felony. The Colt, Model MK IV/SERIES 80, .380 caliber pistol, bearing serial number RC52260 was manufactured outside of the Commonwealth of Kentucky; hence, it had travelled in and affected interstate commerce.

On October 26, 2022, in Jefferson County, located in the Western District of Kentucky, defendants Dayton Peterson and Samantha Trummer, aided and abetted by each other and others, knowingly and intentionally possessed with the intent to distribute controlled substances, to include 500 grams or more of a mixture or substance containing a detectable amount of cocaine, and 100 grams or more of a mixture or substance containing a detectable amount of heroin. In furtherance of this drug trafficking, defendant Dayton Peterson possessed a firearm, that is a Romarm/Cugir, model mini Draco, 762 caliber pistol, bearing serial number 22PG-1157.

The defendants dispute all of the above outlined facts.

## C.  SUBSTANTIVE ISSUES OF LAW

The United States intends to file a Notice to Introduce Other Acts Evidence pursuant to

Fed.R.Evid.404(b). This other acts evidence will include testimony from Louisville Metro Police Department officers that their firearms were stolen, and testimony from witnesses that the defendants regularly used car trackers as a means of conducting surveillance on the individuals they planned to target.

Moreover, defendant John E. Lohden, Jr. filed a motion to suppress the evidence derived from the seizure of his cell phone. (DN 133) A suppression hearing has been scheduled for February 26, 2024. Defendant Joshua Lohden has also filed a motion to suppress evidence derived from the seizure of his cell phone. (DN 134)

## D. EVIDENTIARY ISSUES

### A. *Stipulations*

The United States will propose stipulations to the defendants regarding chain of custody and drug evidence, and the defendants' status as convicted felons, as well as their knowledge of that status. In effort to make the most efficient use of the Court and jury's time, counsel will continue to look for appropriate matters for potential stipulations as preparations continue. Any additional proposed stipulations will be brought to the attention of the Court.

### B. *Evidence of Potential Penalty is Not Relevant.*

The United States requests that the defendants be precluded from introducing evidence or commenting in any way about the potential penalty they would face upon conviction. Courts have long held that the question of punishment should never be considered by a jury in a criminal case. *United States v. McDonald*, 935 F.2d 1212, 1222 (11th Cir. 1991). "It is axiomatic that it is the exclusive function of juries to determine whether defendants are guilty or not guilty, and of the Court to determine matters of punishment." *United States v. Davidson*, 367 F.2d 60, 63 (6th Cir.

1966). (Citing *Sullivan v. United States*, 317 F.2d 101, 102 (5th Cir. 1963)).

Section 8.05 of the Sixth Circuit Pattern Criminal Jury Instructions, current through March 24, 2023, makes it clear that any decision regarding punishment in a criminal case is the province of the trial judge, not the jury. Therefore any evidence, question, or argument regarding penalty would be improper and thus inadmissible.

C. *Chain of Custody*

If the exhibit is susceptible to tampering or contamination, "chain of custody" evidence is needed to show that substitution, tampering, or contamination is improbable. *United States v. Jones*, 356 F.3d 529, 535 (4th Cir. 2004). In most cases, defects in the chain of custody go to the weight, not admissibility. *See United States v. Allen*, 619 F.3d 518, 525 (6th Cir. 2010) ("it does not appear that there was anything improper about Officer Hixon's replacement of the original evidence bag, and Agent Montejo provided several explanations for the decrease in weight [of the crack cocaine]"); *United States v. Rawlins*, 606 F.3d 73, 84-85 (3d Cir. 2010) (presumption of regularity covers defects in cocaine chain); *United States v. Tatum*, 548 F.3d 584, 587 (7th Cir. 2008) (affirms the admissibility of drugs with a foundation patched together from past recollection recorded and the presumption of regularity). "There is no rule that the prosecution must produce all persons who had custody of the evidence to testify at trial." *Cardenas,* 864 F.2d at 1532. "Only a prima facie showing of genuineness is required; the task of deciding the evidence's true authenticity and probative value is left to the jury." *United States v. Fluker*, 698 F.3d 988, 999 (7th Cir. 2012). A proponent "is not required to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *Achey v. BMO Harris Bank, N.A.*, 64 F.Supp.3d 1170, 1175 (N.D. Ill. 2014).

D. *Internet maps*

Professional looking maps can be created from Internet sources such as Google Maps,

Google Earth, MapQuest, and Bing Maps. The maps may properly be the subject of judicial notice. *See, e.g., Cloe v. City of Indianapolis*, 712 F.3d 1171, 1177, n. 3 (7th Cir. 2013) ("[w]e have taken judicial notice of—;and drawn our distance estimates from—;images available on Google Maps, 'a source whose accuracy cannot reasonably be questioned, at least for the purpose of determining' general distances." (quoting *United States v. Perea-Rey*, 680 F.3d 1179, 1182, n. 1 (9th Cir. 2012)).

### E. *Expert Testimony by Drug Investigators*

If "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," a qualified expert may provide opinion testimony on the issue in question. Fed. R. Evid. 702. As a general principle, law enforcement officers with sufficient training and experience have been qualified to testify concerning the methods and techniques employed in drug trafficking and offer expert opinion testimony that a defendant's activities indicated that the defendant was acting in accordance with the usual modus operandi. *United States v. Espinosa,* 827 F.2d 604, 612 (9th Cir. 1988) (affirming admission of several opinions offered that an apartment was a "stash pad," that written lists were drug ledgers, and that an exchange had been a drug transaction.) The courts have also affirmed the admission of expert or lay opinion testimony on a multitude of facets relating to drug trafficking. *United States v. Smith,* 601 F.3d 530 (6th Cir. 2010) (IRS summary witness testified at the end of the government's proof about the investigation into the defendants' finances, how drug organizations launder money, and the structure of this drug organization, identifying both Smith and Garrett as 'drivers').

A properly qualified drug investigator may testify that a quantity of drug was intended for distribution, rather than possessed for personal use, without violating Fed. R. Evid. 704(b), which bars an expert from giving an opinion on whether a defendant had a mental state that constitutes

an element of the crime. *United States v. Gonzales*, 307 F.3d 906, 911-12 (9th Cir. 2002). Agents' expert testimony as to tools of the drug trade has become routine. *United States v. White,* 563 F.3d 184 (6th Cir. 2009). Expert testimony to reliably show the retail value of the drugs seized from a defendant is admissible without being subject to the factors applicable to other kinds of expert testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1994). *United States v. Mendoza-Paz*, 286 F.3d 1104, 1112-13 (9th Cir.) *cert. denied*, 537 U.S. 1038 (2002); *United States v. Ogbuehi,* 18 F.3d 807, 812 (9th Cir. 1994) ("DEA agents can testify as to the street value of narcotics . . . and counsel can argue reasonable inferences from it.").

### E. POTENTIAL TRIAL PROBLEMS

The United States is not aware of any potential trial problems.

### F. SUBSTANTIVE AND SPECIAL JURY INSTRUCTIONS

The United States has tendered proposed jury instructions by separate filing.    .

### G. PROPOSED VOIR DIRE QUESTIONS

1. Is any member of the panel acquainted, either professionally or socially, with:
   a. The defendants?
   b. The defense attorney?
   c. The case agent?
   d. The Assistant United States Attorneys?

2. This is a criminal case. Do any of you have any moral, religious or philosophical beliefs that would prohibit you from being a fair and impartial juror in this case? In other words, does anyone have a problem with sitting in judgment of another person?

3. This case was investigated by the Federal Bureau of Investigation, and the Louisville Metro

Police Department. Has any member of the panel or any member of your family or your close friend/associate had any negative contact with any law enforcement agency? Does anyone hold any negative views of law enforcement officers in general? Would these experiences or opinions affect your ability to be fair and impartial to the government in this case?

4. Has any member of the panel or any member of your immediate family or close friend/associate had an unpleasant experience in court or involving lawyers which would cause you to be biased against either of the parties?

5. Have you or anyone close to you ever been investigated, arrested or convicted of a non-traffic related violation of state or federal law?

6. Have you or anyone in your family or a close friend ever testified in a criminal trial?

7. Have you or anyone in your family or a close friend ever been involved in a suit or other dispute against any government agency, particularly the Federal Bureau of Investigation, or the Louisville Metro Police Department?

8. Have you ever served on jury duty before? Was it a criminal case or a civil case? If so, was the jury able to reach a verdict? What was it?

9. Have you or anyone in your family or a close friend ever received any legal training, practiced law, or worked in an attorney's office?

10. Is there any member of the panel who would not believe the sworn testimony of a government or state agent merely because he or she was a police officer or government employee?

11. How many of you regularly watch crime dramas on t.v. like "C.S.I." or "Law and Order"? Asking you if you understand that those shows are fiction and this is real, would insult your

intelligence and that is not my purpose. However, I want to ask some questions about expectations. Many times those shows feature a scientific test that solves the case or a witness who confesses on the witness stand. Do any of you expect to hear those types of evidence? The judge will instruct you on the elements of each offense. Those are the facts that the government must prove to you beyond a reasonable doubt. That is the burden. Will any of you hold the government to a different burden based on your expectations or require them to prove to you something that is not in the instructions. In other words, can you convict someone if the government has proven all the elements of the crime, but has not proven something else, something about which you may be wondering?

12. That brings me to the burden of proof. You'll hear that the government has the burden of proof and the standard it has to meet is proof beyond a reasonable doubt. That doesn't mean that they have to prove the case beyond all doubt, just that which is reasonable. Does anyone have a problem with that?

13. There are two types of evidence, direct and circumstantial. Direct evidence can be physical evidence such as a gun or some drugs. It can also be testimony. Circumstantial evidence is evidence that requires jurors to draw an inference from a set of facts. For example, if you go to bed at night and there is no snow on the ground, but when you wake up in the morning, the ground is covered with snow, your observations are circumstantial evidence that it snowed during the night. Does everyone understand that the law has no preference for either type of evidence and doesn't presume that one is better than the other? Does anyone have a problem with that?

14. Do any of you believe that the possession of firearms should be legalized under all circumstances? Does anyone believe convicted felons should be allowed to have firearms?

15. If selected as a juror in this case, do you understand that any personal feelings you may have must be set aside if they conflict with the law as the Court will instruct you?

16. Have you, or any member of your family or any friend, had a problem involving the use of a controlled substance such as cocaine, heroin, marijuana, fentanyl or methamphetamines?

17. Have you, or any member of your family or any friend, ever been charged with a drug-related offense?

18. Have you ever studied or are you knowledgeable in the areas of drug addiction? Drug rehabilitation? Drug trafficking? Drug detection?

19. Do you understand that in federal courts, punishment, if any, is imposed by the Court and that your verdict must in no way be affected by your concern for what punishment, if any, would be proper? Would each of you be able to consider the facts of the case and render a verdict without concern for what punishment would later be imposed?

20. Do you understand that a defendant on trial is entitled to a presumption of innocence, but as with all presumptions, it may be overcome by competent evidence?

21. Do any of you have difficulty hearing, seeing or sitting for long periods of time?

22. Do any of you have events going on in your lives that would distract your attention from the testimony and evidence of this case?

23. Do any of you know one another? If so, would you be influenced by the opinions or beliefs of the person you know?

## H.  EXHIBIT LIST

The United States submits under separate cover a draft exhibit list and will supplement as needed. The exhibits will be comprised of photographs, jail phone calls, video clips, documents,

and physical evidence collected, including firearm evidence. The United States will confer with counsel prior to trial regarding the authentication of the exhibits and bring to the Court's attention any issues arising therefrom.

**I. WITNESS LIST**

The United States shall submit, by separate filing, a proposed witness list for the Court's *in camera* review.

Respectfully Submitted,

MICHAEL A. BENNETT
UNITED STATES ATTORNEY

*s/ Alicia P. Gomez*
Alicia P. Gomez
Assistant United States Attorney
717 West Broadway
Louisville, Kentucky 40202
(502) 582-6326
(502) 582-5067 (fax)
alicia.gomez@usdoj.gov

*s/ Frank E. Dahl, III*
Frank E. Dahl, III
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

On February 20, 2024, I electronically filed this document through the ECF system, which will send a notice of electronic filing to all Counsel of record.

*s/ Alicia P. Gomez*
Assistant United States Attorney
